IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH W.,[1] | ) |
|         Plaintiff, | ) ) ) |
| v. | ) Case No. 23-cv-943-RJD[2] |
| COMMISSIONER of SOCIAL SECURITY, | ) ) ) |
|         Defendant. | ) ) ) |

## ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB and SSI in December 2020, alleging an onset date of December 18, 2020. Tr. 13. After holding an evidentiary hearing on September 14, 2022, ALJ Michael Scurry denied the application. Tr. 23. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final and subject to judicial review. Tr. 1. Plaintiff exhausted administrative remedies and filed a timely Complaint with this Court.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this MemOrder due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties. Doc. 10.

## Issues Raised by Plaintiff

Plaintiff makes the following arguments:

1. The ALJ failed to properly evaluate residual functional capacity ("RFC").

2. Defendant failed to satisfy its burden at Step 5 of the sequential evaluation.

3. The ALJ failed to properly evaluate opinion evidence.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations.[3] Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability.

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

Importantly, this Court's scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) and cases cited therein.

## The Decision of the ALJ

The ALJ followed the required five-step analytical framework. He determined that Plaintiff had not engaged in substantial gainful activity since December 18, 2020. Tr. 15.

The ALJ found that Plaintiff has severe impairments of "bipolar disorder with psychotic features, major depressive disorder, anxiety, degenerative disc disease, obesity, right knee osteoarthritis, and chronic obstructive pulmonary disease." Tr. 15-16. However, he found that

Plaintiff does "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."

The ALJ found that Plaintiff has the residual functional capacity to:

Perform light work…except he can never climb ladders, ropes or scaffolds, but can frequently climb ramps or stairs. He can frequently kneel and crouch. He can occasionally stoop and crawl. The claimant must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, dust, odors and gases, poor ventilation, and hazards. He can understand, remember and apply information for simple, repetitive tasks. He can concentrate, persist, and maintain pace for such tasks in a routine setting and can interact with others occasionally.

(Tr. 59).

Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff is unable to perform past relevant work yet concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.   Tr. 22.

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this Order. The following summary of the record is tailored to Plaintiff's arguments.

1. **Evidentiary Hearing**

Plaintiff testified that he lives with his daughter (10 years old at the time of the hearing) and two other female family members, one of whom was in a wheelchair that Plaintiff "help[s] take care of her as much as I can."   Tr. 36.   Plaintiff explained that to help take care of her, he makes coffee and "if something happens in the house, I can get her out of the house."   Tr. 37.

Plaintiff previously worked at Casey's General Store in December 2020, but he had a "mental breakdown" and was "let go because [he] walked out."   Tr. 38.   When asked to explain what limited his ability to work, Plaintiff testified "I can't think anymore.   Like I get upset and

I've got voices in my head that tell me to do things to people that ain't right…. I've got one that tells me to hurt people and I've got one that tells me to kill myself….And then I get angry with people and lash out at people for no reason."  Tr. 41.  He was taking a new medication, but "it [was] not working well…I live in an emotional rollercoaster.  And the doctors try to help me.  And it's slowly helping.  It's just not 100%." Tr. 42.  Some medications make the voices "nicer….[the medication] kind of changes their wording."  Tr. 47.  He had a difficult time staying on task and had to "write down everything that I have to do" even reminders to "sweep the house…and stuff like that." Tr. 54.

On most days, Plaintiff would wake up by 7am and take his medications.  Tr. 42.  Sometimes he would do housework and/or yardwork, and some days he would cook dinner.  Tr. 42.  On other occasions, he "just ha[d] no motivation to do anything."  Tr. 42.  To pass the time, he could not "stay focused long enough" to do anything else other than watch t.v.  Tr. 43.

Vocational expert Dennis Gustafson testified.  Tr. 54.  The ALJ posed the following hypothetical:

> …an individual (who is 35 years old with a high school education) who could perform light work as defined in Social Security Regulations, but could never climb ladders, ropes, or scaffolds. Could frequently climb ramps and stairs, kneel and crouch. Could occasionally stoop and crawl and would need to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibrations, fumes, odors, dust, gases, poor ventilation, and hazards. ..the individual would be able to understand, remember, and apply information for simple, repetitive tasks. Could concentrate, persist, and maintain pace for such tasks in a routine setting and could interact with others occasionally.

The vocational expert testified that there would be light, unskilled jobs that exist in the national economy.  Tr. 57.  For a second hypothetical the ALJ asked the expert to assume the same

residual functional capacity as listed in the first hypothetical, but also "the individual would not be able to tolerate the routine interpersonal demands of such work or be able to tolerate the routine changes involved with such work on a consistent basis, eight hours a day, five days a week."  Tr. 58.  The vocational expert testified that there would be no employment for an individual with that additional limitation.  Tr. 58.

2. **Relevant Medical Records**

From December 2020-June 2022, Plaintiff regularly saw APN Kari Koster for medication management for bipolar disorder and depression.  Tr. 530- 579.  He reported that he lost his job because he was too anxious around other people. Tr. 531.   In January 2021, he reported that he had auditory hallucinations daily and panic attacks several times a week. Tr. 531. By June 2021, he reported occasional auditory and visual hallucinations. Tr. 541.   In October 2021, APN Koster noted that "there is worsening of previously reported symptoms."  Tr. 545.  Plaintiff presented with anxious/fearful thoughts, compulsive thoughts, depression, difficulty concentrating, racing thoughts, auditory and visual hallucinations, and paranoia. Tr. 545.  APN Koster noted that Plaintiff's prescription history suggested he was not taking his medications on a daily basis. Tr. 547.

In December 2021, Plaintiff reported that a particular medication had helped significantly with his auditory hallucinations; the "voices no longer [told] him to hurt himself or do negative things."  Tr. 552.  However, he was having difficulty with mood swings and felt that he was "going off" on others for "no reason."  Tr. 552.  In March 2022, Plaintiff reported that his "anger outbursts are well managed at this time.  Tr. 569.  In June 2022, Plaintiff reported to APN Koster that his anxiety was managed fairly well at home, but he had anxiety and panic attacks when he

left the house. Tr. 575.

### 4. Consultative exam

Stone Kraushaar, Psy.D conducted a psychological consultative exam in May 2021. Dr. Kraushaar "deemed [Plaintiff] to be a good historian." Tr. 450. Dr. Kraushaar noted that Plaintiff is "constantly paranoid and feels that he can't trust others, and this has caused him problems throughout his life." Tr. 452. Plaintiff "can learn new material but its much better if he is shown how to do something and has anxiety that interferes with his ability to focus." Tr. 452. Dr. Kraushaar found that Plaintiff's affect was "flat and mood to be somewhat depressed and anxious." Tr. 451. He did not exhibit hallucinations or delusions. Tr. 451. However, Plaintiff reported that "it feels like I have 20 people talking to me now it seems." Tr. 452. Plaintiff indicated that he struggled with motivation and memory. Tr. 452. Dr. Kraushaar's prognosis was "fair to poor." Tr. 453.

### 5. Consultative psychologists

M.W. DiFonso, Psy.D. and Joseph Mehr, Ph.D. (both state agency consultative psychologists) assessed Plaintiff's mental residual functional capacity. Tr. 90-100, 99-101. Dr. DiFonso reviewed Dr. Kraushaar's evaluation and noted that Plaintiff's "cognitive and attentional skills are intact and adequate for simply one-two step as well as multiple step tasks. Performs reasonably well on cognitive tasks…carries out a fair set of ADLs. Depressive symptoms. Moderately limit ability to carry out detailed tasks….adaptive skills are within normal limits…..capable of multiple step productive activity with modified social demand." Tr. 75. Plaintiff had moderate limitations in his ability to maintain attention and concentration for extended periods. Tr. 73. Dr. Mehr affirmed Dr. DiFonso's findings. Tr. 101, 105.

**Analysis**

Plaintiff argues that there are three bases for the Court to remand this case: 1) the ALJ failed to properly evaluate residual functional capacity; 2) the Commissioner failed to satisfy his burden at Step 5 of the sequential evaluation; 3) the ALJ failed to properly evaluate opinion evidence. Of these arguments, the Court agrees with Plaintiff on only the first one, that the ALJ failed to properly evaluate residual functional capacity.

**Residual Functional Capacity**

Plaintiff contends that the RFC does not account for his moderate limitations in concentration, persistence, and pace ("CPP"). At step three, the ALJ found that "with regard to concentrating, persisting, or maintaining pace, [Plaintiff] has a moderate limitation." In determining the RFC at step four, however, the ALJ merely stated that Plaintiff could "understand remember, and apply information for simple, repetitive tasks. Could concentrate, persist, and maintain pace for such tasks in a routine setting." The Seventh Circuit has repeatedly held that similar language in the RFC does not, by itself, account for moderate limitations in concentration, persistence and pace because "someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Lothridge v. Saul*, 984 F.3d 1227, 1233-34 (7th Cir. 2021) (internal citations and quotations omitted). After finding that Plaintiff had a moderate limitation in CPP, the ALJ failed to include a corresponding limitation in the RFC.[4] This error requires remand. *Id*, p. 1235.

**Step 5 of the Sequential Evaluation**

Plaintiff then argues that the Commissioner failed to satisfy his burden at Step 5 by

---

[4] The Commissioner makes no attempt to argue otherwise, as noted by Plaintiff in her reply brief.

establishing that there is work that exists in significant numbers in the national economy that Plaintiff can perform.  The ALJ found that Plaintiff could "occasionally" interact with others; according to Social Security Ruling 83-10, "occasionally" means "very little to up to one-third of the time."  Plaintiff then points the Court to the following testimony by the vocational expert, given in response to his attorney's questioning:

> Q: And I'm going to try to word this as closely as I can to what [APN Koster] was saying. But if up an occasional basis, the individual would be unable to relate to coworkers, deal with the public, use judgment, or interact with supervisors or deal with work stress or behave in an emotionally stable manner, or relate predictably in social situations or demonstrate reliability, up to occasionally, they'd be unable to do those things. And I'm happy to repeat any of those if you need it. But if occasionally they'd be able to do any of those things in a work setting, would this have an impact on that individual's ability to maintain competitive employment.
>
> A: Yes, that's a lot of different factors and certainly the inability to regularly interact as necessary with a supervisor alone would rule out employment.  But the combination of things you stated would suggest the inadequate productivity over time.

Tr. 59- 60.

From this testimony, Plaintiff gleans that "an individual who cannot relate to, work with, cooperate with and accept criticism from a supervisor 2/3 of each workday cannot maintain competitive work, which requires the ability to 'regularly interact with supervisors.'"  Because the ALJ found that Plaintiff could only "occasionally" (up to 1/3 of the work day) interact with others, Plaintiff concludes that the ALJ was mistaken when he found that Plaintiff can perform jobs in the national economy.  The Court is not persuaded by Plaintiff's reasoning because he bases it on unclear testimony given by the vocational expert in response to an even murkier hypothetical posed by Plaintiff's attorney.  In any event, the ALJ was not required to discuss this

hypothetical in his decision because it appears to contain limitations that he did not adopt. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). For example, the ALJ found (and explained the evidence to support this finding) that Plaintiff could occasionally interact with others, while Plaintiff's attorney's hypothetical states that "up an occasional basis, the individual would not be able to relate to coworkers." Tr. 17, ¶1; Tr. 59.

**Opinion Evidence**

Finally, Plaintiff argues that the ALJ failed to properly evaluate opinion evidence. Plaintiff contends that the ALJ improperly credited the state agency psychological consultants over the opinions of APN Koster (who was treating Plaintiff) and Dr. Kraushaar (who examined Plaintiff). However, the ALJ explained the basis for his findings-that Dr. Kraushaar relied on Plaintiff's subjective reporting, which was inconsistent with the evidence in the record. Tr. 19. The ALJ also noted that APN Koster's completion of the "Medical Assessment of Ability to Do work Related Claims" indicated that Plaintiff had "no useful ability" to relate to others, which was not supported by the evidence. Tr. 21, 580. The ALJ further explained his rationale for relying on the agency psychological consultants: they reviewed Plaintiff's medical records and "supported their findings with narrative explanations and citations to the record." Tr. 21. This argument is simply an invitation to reweigh the opinion evidence, which is not a proper basis for remand. *See L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019).

## Conclusion

After careful review of the record as a whole, the Commissioner's final decision denying Plaintiff's application for a period of disability and disability insurance benefits is REVERSED and REMANDED to the Commissioner for further proceedings consistent with this Order.

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: March 20, 2024**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**
